UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 19-365-DLB**

**CRYSTAL DAVIS TOLLE**                                                                                       **PLAINTIFF**

**v.**              **MEMORANDUM OPINION AND ORDER**

**ANDREW SAUL, Commissioner**
**of the Social Security Administration**                                                                **DEFENDANT**

\*\*   \*\*   \*\*   \*\*   \*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive Motions (Docs. # 7 and # 11), and for the reasons set forth herein, hereby **reverses** and **remands** the decision of the Commissioner.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Crystal Davis Tolle protectively filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II alleging disability beginning on April 12, 2015. (Tr. 13). That application was denied initially on January 29, 2016, and it was also denied upon reconsideration on June 13, 2016. *Id.* At Plaintiff's request, an administrative hearing was conducted,[1] *id.*, and on August 22, 2018, Administrative Law Judge ("ALJ")

---

[1] The hearing took place in two parts before the same Administrative Law Judge. The first hearing took place on January 25, 2018. *Id.* at 45–74. At that time there were a number of missing medical records. *Id.* at 30. Additionally, after the first hearing "the ALJ ordered additional medical testing." (Doc. # 11 at 6) (citing (Tr. 72, 349–50)). Once the additional records and test results were received, a second hearing was conducted on July 26, 2018 to discuss that additional evidence. (Tr. at 30–42).

Roger L. Reynolds found that Tolle was not disabled and, therefore, not entitled to benefits. *Id.* at 13–21. This decision became the final decision of the Commissioner on August 27, 2019 when the Appeals Council denied Plaintiff's request for review. *Id.* at 1–6.

Plaintiff filed the instant action on September 11, 2019 alleging that the Commissioner's decision was contrary to law. (Doc. # 1). The matter has culminated in cross-Motions for Summary Judgment, which are now ripe for adjudication. (Docs. # 7 and # 11).

## II.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v.*

*Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side.  *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988) (citations omitted).  Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion.  *Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996) (citations omitted).

      **B.**      **The ALJ's Determination**

To determine disability, the ALJ conducts a five-step analysis.  Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  *See Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 48 U.S. 137, 140–42 (1987); *Hogg v. Sullivan*, 987 F.2d 328, 331–32 (6th Cir. 1993)).  The burden of proof rests with the claimant on Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen*, 482 U.S. at 146 n. 5).  As to Step Five, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [the claimant's] residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n. 5).  The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did here.  *See Thacker v. Berryhill*, No. 16-cv-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 1–3).

Here, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 12, 2015—the alleged onset date of the disability. (Tr. 15). At Step Two, the ALJ determined that the Plaintiff has the following severe impairments: a history of Legionnaires' disease with a MRSA infection, ultimately requiring excision of a pulmonary necrotic mass; a cardiovascular accident with residual left side weakness; Evan's syndrome; headaches; degenerative disc disease of the lumbar spine with multilevel disc bulges/protrusions; a mild cognitive decline; and a history of endocarditis. *Id.* at 16. He determined that her other impairments, including psoriasis, left ear hearing loss, mild obesity, gastroesophageal reflux disease, and dysphagia, were not severe. *Id.* At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 16–17.

The ALJ then found that Plaintiff possesses the residual functional capacity ("RFC") to perform a limited range of work at the sedentary level as defined in 20 C.F.R. § 404.1567(a), with the following modifications and limitations:

> She could engage in only frequent use of the left upper extremity for reaching, grasping, handling, fingering or feeling; no climbing of ropes, ladders or scaffolds; occasional climbing of stairs or ramps; frequent stooping, kneeling, crouching or crawling; no aerobic activities such as running or jumping; no work with hands over the head; and no exposure to concentrated dust, gasses, smoke, fumes, temperature extremes, excess humidity, concentrated vibration or industrial hazards. She requires entry level work with simple repetitive procedures, can tolerate only occasional changes in work routines, and should work in an object oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

*Id.* at 17. Based on this RFC and relying on the testimony of a vocational expert ("VE"), at Step Four the ALJ concluded that the Plaintiff was unable to perform her past relevant

4

work as an automobile dealership secretary, bank worker, and factory data entry clerk. *Id.* at 19.  Thus, the ALJ proceeded to Step Five where he determined, informed by testimony of the VE, that there were other jobs that exist in significant numbers in the national economy that the Plaintiff could perform.  *Id.* at 20.  Accordingly, the ALJ ruled that the Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset of disability date through the date of his decision.  *Id.*

### C.  Analysis

Tolle advances two main arguments in support of her Motion for Summary Judgment.  (Doc. # 7-1).  First, Tolle claims that the ALJ erred by failing to provide good reasons for giving little weight to the opinion of treating physician, Dr. Michael Boyd.  *Id.* at 10–14.  Second, Tolle argues that the ALJ erred in not accepting the disabling limitations advanced by state agency examiners, Dr. Roy Watson and Dr. Jacolby Short. *Id.* at 14–15.  She suggests that these alleged errors require reversal of the Commissioner's decision and asks the court to instate benefits or remand the case for further consideration by the Commissioner.  *Id.* at 13, 15.  The Court will consider each argument in turn.

### 1.  *The ALJ's consideration of the treating physician's opinion was improper.*

Tolle suggests that the ALJ failed to give the required good reasons for discounting the opinion of Dr. Boyd.  *Id.* at 10–14.  Specifically, Plaintiff argues that Dr. Boyd's opinion was supported by her medical records and consistent with the findings of two state agency examining physicians.  *Id.*  She argues that, despite this, the ALJ did not properly explain why he gave little weight to Dr. Boyd's opinion, which indicated that Tolle could not, among other things, use her left hand and; an opinion the ALJ described as "extremely

5

limiting." *Id.*; *see also* (Tr. 18).  She also accuses the ALJ of cherry-picking portions of the record, particularly portions of the findings from a consultative examination he ordered, which go against Dr. Boyd's opinion.  (Doc. # 7-1 at 12).

Under the treating-physician rule,[2] the medical opinion[3] of a treating physician about "the nature and severity of your impairment(s)" is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 404.1527(c)(2); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).  An ALJ giving less than controlling weight to a medical opinion from a treating physician[4] must consider a number of factors including: "the length, frequency, nature and extent of the treatment relationship," "the treating source's area of specialty[,] and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence" in coming to that decision.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (internal citations omitted) (citing 20 C.F.R. §§ 404.1527(c)(2)–(6)).  Regardless of the weight given, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) ("In many cases, a

---

[2] The language of the treating-physician rule moved from 20 C.F.R. § 404.1527(d)(2) to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014)).

[3] Medical opinions include "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions."  20 C.F.R. § 404.1527(a)(1).

[4] The ALJ may also consider medical opinions from non-treating sources.  20 C.F.R. § 404.1527(c).  "Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."  *Id.* at § 404.1527(c)(1).

6

treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)); *see also Gentry*, 741 F.3d at 723.

If an ALJ determines that a treating physician's opinion should not be given controlling weight, the ALJ must provide "good reasons" for making that determination and "for [the] ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (citing *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804–05 (6th Cir. 2011); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406–07 (6th Cir. 2009); 20 C.F.R. § 404.1527(c)(2)). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases"; this is particularly important "in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting *Snell v. Apfel*, 177, F.3d 128, 134 (2d Cir. 1999)). Additionally, "[t]he requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* at 544–45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004)).

"An ALJ fails to give good reasons when the ALJ discounts a treating-source opinion without articulating the weight given to it." *Hargett v. Comm'r of Soc. Sec.*, __ F.3d __, 2020 WL 3833072, at *4 (6th Cir. July 8, 2020) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). Additionally, as part of the good-reasons requirement, the ALJ "must provide an analysis of the [previously-noted] factors under 20 C.F.R. § 404.1527(c)." *Id.* (citing *Rogers*, 486 F.3d at 245–46); *see also Cole v. Astrue*,

7

661 F.3d 931, 938 (6th Cir. 2011) ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.").

It is also the case that "an ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating source opinion." *Id.* (citing *Gayheart*, 710 F.3d at 376–77; *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010)). Moreover, an ALJ may not discount the opinion of a treating physician without explanation because of "the existence of a contrary conclusion by a different physician." *Id.* (citing *Hensley v. Astrue*, 573 F.3d 263, 266–67 (6th Cir. 2009)). In sum, "bare, conclusory statements neither satisfy the notice requirement of the good reasons rule nor allow us to review meaningfully whether the ALJ properly applied the treating physician rule." *Id.* at *5.

Here, the ALJ considered Dr. Boyd's opinion in a mere two sentences. He said:

> Little weight is given to an extremely limiting opinion from Michael Boyd, MD, who indicated that the claimant could not, among other things, ever use her left hand (Exhibit 21F). It is noted that a February 2018 consultative examination found that she had 4+/5 left upper extremity strength, 5/5 grip strength, and no swelling, atrophy, or tenderness (Exhibit 27F).

(Tr. 18). This explanation is far from sufficient and fails to provide good reasons for giving little weight to the opinion of Dr. Boyd—one of Tolle's treating physicians.[5] The ALJ merely made "bare, conclusory statements." *Hargett*, 2020 WL 3833072, at *5. Given

---

5   The Commissioner does not appear to dispute Plaintiff's characterization that Dr. Boyd was a treating physician. *See* (Doc. # 11). Additionally, the record shows that the Plaintiff saw Dr. Boyd on at least four occasions. (Tr. 1492–95) (Records from visit with Dr. Boyd on March 1, 2016); *id.* at 1488–91 (Records from visit with Dr. Boyd on March 14, 2016); *id.* 1988–94 (Records from visit with Dr. Boyd on December 12, 2017 and January 9, 2018).

the brevity of his analysis, it is unsurprising that the ALJ did not analyze the factors elucidated in 20 C.F.R. § 404.1527(c) as required. *See id.*, at *4 (citing *Rogers*, 486 F.3d at 245–46; *Cole*, 661 F.3d at 938). A liberal reading of the ALJ's explanation suggests that the ALJ discounts Dr. Boyd's opinion because he believes it is inconsistent with the record. (Tr. 18). The ALJ, however, only "notes," without explaining further, that a grip and extremity test indicated that the Plaintiff has some strength in her left hand as well as "no swelling, atrophy, or tenderness." *Id.* With this "note[]," it could be assumed that the ALJ is trying to draw attention to one finding in the record which is apparently inconsistent with Dr. Boyd's opinion. *Id.* Merely one citation to the record without any attempt at explanation, however, does not meet the requirement of giving good reasons. "Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend*, 375 F. App'x at 552. As the ALJ has failed to give good reasons for discounting Dr. Boyd's opinion as required, this matter must be reversed and remanded for further proceedings consistent with this opinion. *Id.* at 551 (citing *Wilson*, 378 F.3d at 543–46).

### 2. *The ALJ properly considered the opinions of state agency examiners Dr. Roy Watson and Dr. Jacolby Short.*

Second, Tolle argues that the ALJ erred by not accepting the limitations put forth by two state agency examiners—Dr. Roy Watson and Dr. Jacolby Short—including one who examined her in between the first and second hearing at the ALJ's request. (Doc. # 7-1 at 14–15). Specifically, she argues that the ALJ discounted, by giving little weight to, all of the examining physicians and instead relied on opinions of people who did not

9

examine her and gave opinions that were less restrictive.  *Id.*  Tolle suggests that the ALJ sent her for an additional consultative examination[6] after her first hearing with the "hope[] to find an opinion from an examining source not favorable to the claimant."  *Id.*  She argues that because the newest consultative examination opinion "found the same [favorable limitations] as previous examining doctors, the ALJ should have granted Ms. Tolle benefits."

As previously discussed, medical opinions are considered "together with the rest of the relevant evidence" received when determining whether a claimant is disabled.  20 C.F.R § 404.1527(b).  When an opinion is not a treating source opinion that is given controlling weight,[7] the ALJ must consider "the examining relationship (or lack thereof), specialization, consistency, and supportability"—in determining the weight to be given to that opinion.  *Gayheart*, 710 F.3d at 376; *Id.* at § 404.1527(c).  However, an ALJ is not required to meet the same good-reason requirement when evaluating opinions of non-treating sources.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Here, the Plaintiff seems to admit that neither Dr. Watson nor Dr. Short were treating physicians.  *See* (Doc. # 7-1 at 14–15) (identifying them merely as state agency examiners).  Accordingly, the ALJ was not required to give good reasons for discounting their opinions.  *See Smith*, 482 F.3d at 876.  The ALJ was, however, required to consider both opinions in light of the factors included in the Regulations discussed *supra*.  20 C.F.R. § 404 1527(c).

---

[6]  On February 19, 2018, Plaintiff saw Dr. Jacolby Short in Maysville, Kentucky for this additional consultative examination.  *Id.* at 14.

[7]  The Court notes that, on remand, the treating physician's opinion may be given controlling weight.  If that occurs, the ALJ need not weigh other "opinions from nontreating and nonexamining sources."  *Gayheart*, 710 F.3d at 476.

10

The ALJ explained that "[l]ittle weight is given" to the opinions from "consultative examiners" because the opinions "adopted all the symptoms the claimant asserted"; the ALJ also claims these opinions "are inconsistent with the medical evidence of record (especially Exhibit 19F) and their own physical examinations." (Tr. 18). He seems to take issue with both doctors' conclusions that Tolle could not use her left hand. *Id.* Presumably to point out the alleged inconsistencies, the ALJ cites evidence from each doctors' respective examination reports which indicate that Tolle has some grip strength and extremity strength in her left hand, among other things. *Id.*

A liberal reading of the ALJ's explanation finds that he did consider both opinions in light of their supportability by the medical examinations and consistency with some of the other medical evidence presented (specifically, Exhibit 19F) as required by the Regulations. 20 C.F.R. §§ 404.1527(c)(3)–(4). The ALJ also touched on the examining and treatment relationship each had with the Plaintiff by indicating that the opinions came merely from consultative examiners. *Id.* at §§ (c)(1)–(2). Thus, the ALJ did appear to consider the necessary factors when determining the weight given to the opinions of Dr. Watson and Dr. Short. As these opinions were from non-treating sources and the ALJ was not required to meet the higher bar of providing good reasons for discounting their opinions, the Court finds that the ALJ's explanation was not in error and that the ALJ properly weighed these opinions.

### III.    CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ failed to follow Social Security Administration Regulations and remand is required.

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Doc. # 7) is hereby **GRANTED**;

(2) Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3) This action is hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately explain his treatment of Dr. Boyd's opinion, consistent with this Memorandum Opinion and Order; and

(4) A Judgment will be entered contemporaneously herewith.

This 23rd day of July, 2020.

Signed By:
*David L. Bunning* DB
United States District Judge

J:\DATA\SocialSecurity\MOOs\Lexington\19-365 Tolle MOO.docx